RANDY S. GROSSMAN
United States Attorney
ALLISON B. MURRAY
California Bar No. 328814
Special Assistant U.S. Attorney
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9711
Email: Allison.Murray@usdoj.gov

Attorneys for the United States

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 21-CR-3608-CAB |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| JOSE ALIVER QUINONES PERLAZA (2) | Date: May 4, 2023 |
| | Time: 9:30 a.m. |
| Defendant. | Honorable Cathy Ann Bencivengo |

The UNITED STATES OF AMERICA, by and through its counsel, Randy S. Grossman, United States Attorney, and Allison B. Murray, Special Assistant United States Attorney, hereby files its Sentencing Memorandum as to Defendant Jose Aliver Perlaza. This memorandum is based upon the files and records of the case.

## I.    INTRODUCTION

Jose Aliver Quinones Perlaza ("QUINONES"), Julio Alfredo Angulo Cifuentes ("CIFUENTES"), Harry Segundo Segura Valencia ("SEGURA"), and Jorge Alfredo Barajas Santos ("BARAJAS"), (defendants) are before the Court for sentencing after pleading guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel in violation of 46 U.S.C. § 70503.

A substantial sentence is warranted here. Maritime cocaine smuggling is complicated. The skill, experience, and coordination necessary to transport approximately

960 kg of cocaine on the high seas, on a 35-foot open-style panga vessel is significant. Had the defendants not been stopped by the Coast Guard, their voyage "bringing the coke" would last 10 days and require navigating at least 1500 nautical miles on the open ocean. For comparison, this is about the length of the United States from north to south. During this time, each of the defendants relied on their talents and experience to try and achieve a significant payday.

An appropriate sentence in this case should reflect several key sentencing principles, including the need to deter maritime drug smuggling in general, the need to deter this defendant from reoffending, respect for the rule of law, and the need to protect society from the harm caused by trafficking extreme quantities of drugs. As a seasoned fisherman, Defendant QUINONES was selected for this maritime drug smuggling event due to his familiarity with the marine environment and his trustworthiness. His notable experience at sea from a lifetime on the water provided critical skills to operate and navigate a go-fast vessel from Colombia to Mexico in an environment that can best be described as austere and unforgiving. He was up to the task and did so in return for significant payment, citing his lack of earnings as a fisherman as motivation for committing the crime. With QUINONES's skills, the allure of making significant sums of money trafficking drugs in return for experience at sea will always be there. An appropriate sentence in this case must discourage QUINONES from reoffending.

After taking into consideration the seriousness of the offense and the remaining 3553(a) factors, including avoiding unwarranted sentencing disparities among similarly situated defendants, the United States recommends a sentence of 84 months custody, followed by 5 years of supervised release, no fine, and a $100 special assessment.

//

//

//

## II.    STATEMENT OF FACTS

## A.    The Crime

On December 17, 2021, a Maritime Patrol Aircraft (MPA) detected a go-fast vessel with two outboard engines traveling on a westerly course approximately 220 nautical miles northwest of Manta, Ecuador, in international waters. United States Coast Guard Cutter ("USCGC") STONE, operating nearby, acquired the vessel using a helicopter, and diverted a pursuit small boat with an embarked boarding team to intercept the go-fast vessel.

As the Coast Guard helicopter appeared overhead defendants' vessel, officers observed the defendants jettison bales and fuel barrels overboard. The helicopter ordered the vessel to stop using blue law enforcement lights and audible callouts in English and Spanish. Because the vessel and its occupants failed to comply with the order to stop, warning shots ahead of the go-fast vessel's bow and disabling fire to the vessel's engines forced the vessel to stop.

3



In the meantime, the Coast Guard helicopter vectored the pursuit small boat to the bale field where a single bale was recovered. The Coast Guard pursuit small boat then proceeded to intercept the go-fast vessel and a second small boat was launched from USCGC STONE to recover additional bales from the bale field. In total, the Coast Guard recovered 24 bales.



Upon approach to defendants' go-fast vessel from the small boat, Coast Guard officers observed four individuals, fifteen 55-gallon drums of fuel, and food and drink on deck. The vessel, appearing to be in good condition, was not flying a physical flag, had no

4

registration number or other markings on the hull, and no registration documents. CIFUENTES claimed to be the master of the vessel but did not wish to make a claim of nationality for the vessel. When asked to provide their last port of call and next port of call, it was reported as Buenaventura, Colombia, and Mexico. When asked the purpose of their voyage, CIFUENTES (the master) claimed, "they were bringing the coke." The Coast Guard treated the vessel as without nationality or stateless and conducted a full law enforcement boarding.



USCGC STONE subsequently embarked the four defendants and 24 bales of cocaine, along with one cell phone, multiple SIM cards, and a satellite phone battery. Officers tested a jettisoned bale, which tested positive for cocaine.



**B. Defendant's Statements**

Defendant declined to make a post-arrest statement. During the presence interview, QUINONES adopted the factual basis of the plea agreement and explained that he was financially motivated to commit the crime, citing limited income from fishing. PSR ¶ 15-17.

### III.    THE GUIDELINES

### A.    Calculation

Under USSG § 2D1.1(c)(1), the base offense level is 38. The United States is not recommending any enhancements or reductions for role. Since this was a team evolution and the nature and extent of Defendant's participation was significant (the voyage was expected to last 10 days and cover over 1,500 nautical miles with defendants exhibiting significant discretion), minor role is not appropriate. There is a two-level downward adjustment for Safety Valve, a three-level downward adjustment for acceptance of responsibility, and a four-level downward departure for combination of circumstances/waiver of appeal. QUINONES has met the requirements for Safety Valve under USSG § 2D1.1(b)(18) and 5C1.2. He is in Criminal History Category I per the PSR. The resulting guideline range is 87 to 108 months in custody. Pursuant to the plea agreement, the United States recommends a sentence of 84 months in custody. This accounts for Defendant's unique personal characteristics, including his limited education and relative poverty, as well as the speed with which Defendant resolved this case, saving the Government significant resources, pleading guilty at first opportunity, and foregoing any substantive pre-trial motions.

### B.    Government Recommendation

Several factors justify the Government's recommendation. First, Defendant pled guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel. The evidence demonstrates the defendants coordinated an at-sea voyage spanning hundreds of nautical

miles to transport a vast sum of cocaine valued at tens of millions of dollars. This is a significant drug offense, involving an extreme quantity of cocaine. The quantity involved is over 190 times the amount of cocaine required for a ten-year mandatory minimum and double the amount of cocaine that establishes the highest possible base offense level in the sentencing guidelines. Had the defendants made it to Mexico and the cocaine forwarded on to the United States as expected, the cocaine would have been valued at well over $24,000,000. This volume of cocaine would have caused immeasurable harm to the public.

The trust instilled in QUINONES and his co-defendants similarly influences the Government's recommendation. QUINONES and his co-defendants acted as more than mere drug couriers, as is commonly seen in this District for land-based smuggling crimes. In contrast to a land-based courier tasked with making a short drive across the border, maritime drug smuggling cannot be completed by just anybody and requires specialized skills and considerable trust from cartels. 960 kilograms (the at-sea weight) is a significant load, even by cartel standards. As is known from investigating these crimes, stakeholders from the sell side (Colombia) and buy side (Mexico) invest considerable sums of money to make these shipments possible. It would defy logic and common sense to let untrained and untrusted men guard this quantity of precious cargo for a prolonged period in an environment that already carries significant natural risk. These ventures require unique expertise, and men like the Defendant are selected expressly because of their familiarity with the maritime environment and their trust and confidence in carrying out the task.

Furthermore, this was expected to be a long voyage—ten days. For that entire time, the defendants would maintain complete custody and control of the drugs. They were required to resolve all difficulties that navigating on the high seas brings, including weather, sea state, mechanical challenges, and inconsistent communications. Out in the middle of the ocean hundreds of miles from shore, the defendants were alone in protecting and safeguarding the precious cargo. No one was there to direct their movements—they

7

were captains of their own ship. They only had each other to rely on. They were a team. The trust, responsibility, and authority instilled in QUINONES and his co-defendants weigh against a role reduction and in favor of a substantial sentence.

The sophistication and complexity of carrying out the offense similarly influences the Government's recommendation. It takes considerable skill to operate a 35-ft vessel and know where to go and what course to steer, correcting for sea and weather conditions. More importantly, it involves exercising judgment. Smuggling at sea is not a simple matter of plugging the coordinates into Google Maps. These vessels have no auto-pilot. Instead, QUINONES and his co-defendants would chart or map out their course and consciously decide whether to adjust course or speed. The wind, the waves, the environment all influence their decision in doing so. Imprecision or lack of skill can cause any number of at-sea casualties, including the vessel taking on water, its motor failing, or worse. Moreover, arriving at the interdiction location, over 200 nautical miles from Ecuador, required each defendant to be prepared to be away from home for an extended time, to help navigate the vessel over a multi-day journey, and to rendezvous with other vessels to complete at-sea fuel onloads. Since QUINONES was responsible for driving the panga (not an inconsequential task) and refueling over a multi-day journey, his role was not minor. The sophistication of the offense and QUINONES's comparable skill weigh in favor of a significant sentence and against an adjustment for role.

As mentioned, the United States does not believe an adjustment for role, either aggravating or mitigating, is appropriate. This was a team evolution and the burden rests with the Defendant to demonstrate that he was substantially less culpable than the average participant. Ordinarily, an enhancement can be awarded for navigators, but the United States is not recommending one in this case. Since QUINONES, CIFUENTES, and SEGURA each took turns driving, it would not be appropriate. However, neither is a reduction for role. The defendant bears the burden of proving that he is entitled to a

downward adjustment based on his role in the offense." *United States v. Dominguez-Caicedo*, 40 F.4th 938, 964-66 (9th Cir. 2022) (noting that the relevant comparators are the *actual* participants in the defendant's crime—not that of every hypothetical member of a typical drug trafficking organization). He has not met his burden. QUINONES was not less culpable than the average participant—let alone *substantially* less culpable. QUINONES has not identified any other *actual* participants besides his co-defendants. And, like his co-defendants, QUINONES took turns driving and maneuvering the panga and was involved in the criminal activity for its duration. This was a shared lift. They each understood the scope and structure of the criminal activity, and the extent that they would be involved. He was involved in planning and preparing for the criminal activity, as evidenced by the medicine, wallets, passports, personal effects, and supplies he and his co-defendants carried. Leading up to the event, Defendant agreed to the criminal activity knowing of the potential consequences, enticed by a lucrative reward. The return on his investment and the degree to which he stood to benefit was substantial. Finally, as one of four men on the vessel in the middle of the high seas, he was in control of the vessel in furtherance of the criminal enterprise. QUINONES's specific role included navigation and ensuring the vessel was fueled. Certainly not minor tasks. All factors weighing against a role reduction.

Finally, given the need to generally deter others, and specifically deter this Defendant, it is essential that the sentence reflects the seriousness of this offense and the potential harm from trafficking cocaine on the high seas. Maritime drug smuggling cases often involve reoffenders. The incentive to make large sums of money trafficking drugs at sea is compared against a relatively low risk of being caught in an expansive ocean. This disparity must be combated with the deterrence of significant sentences. Only a significant sentence will discourage QUINONES and future potential traffickers from engaging in similar crimes.

//

9

## C.    Conclusion

After considering the 3553(a) factors, the United States believes the recommended sentence of 84 months in custody, followed by 5 years' supervised release, no fine, and a $100 special assessment is sufficient but not greater than necessary.

DATED: April 27, 2023

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

*/s/ Allison B. Murray*
Allison B. Murray
Special Assistant U.S. Attorney

10