RANDY S. GROSSMAN
United States Attorney
ALLISON B. MURRAY
California Bar No. 328814
Special Assistant U.S. Attorney
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9711
Email: Allison.Murray@usdoj.gov

Attorneys for the United States

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 21-CR-3608-CAB |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| JORGE ALFREDO BARAJAS SANTOS (4) | Date: June 9, 2023 <br> Time: 9:30 a.m. |
| Defendant. | Honorable Cathy Ann Bencivengo |

The UNITED STATES OF AMERICA, by and through its counsel, Randy S. Grossman, United States Attorney, and Allison B. Murray, Special Assistant United States Attorney, hereby files its Sentencing Memorandum as to Defendant Jorge Alfredo Barajas Santos. This memorandum is based upon the files and records of the case.

## I.     INTRODUCTION

Jorge Alfredo Barajas Santos ("BARAJAS") (Defendant) is before the Court for sentencing after pleading guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel in violation of 46 U.S.C. § 70503. Julio Alfredo Angulo Cifuentes ("CIFUENTES"), Jose Aliver Quinones Perlaza ("QUINONES"), and Harry Segundo Segura Valencia ("SEGURA") have either been sentenced or awaiting sentencing.

A substantial sentence is warranted here. Maritime cocaine smuggling is complicated. The skill, experience, and coordination necessary to transport approximately

960 kg of cocaine on the high seas, on a 35-foot open-style panga vessel is significant. Had the defendants not been stopped by the Coast Guard, their voyage "bringing the coke" would last 10 days and require navigating at least 1500 nautical miles on the open ocean. For comparison, this is about the length of the United States from north to south. During this time, each of the defendants relied on their talents, experience, and trust to try and achieve a significant payday.

Hired by the "buy side" of the cocaine shipment in Mexico, BARAJAS was neither a fisherman, nor someone particularly well suited for life at sea. He was there for one reason: he was trusted. In return for substantial payment, BARAJAS traveled all the way from Sonora, Mexico, to Buenaventura, Colombia to ensure the precious load made it safely north to Mexico. Defendant ably guarded the cocaine until interdiction by the Coast Guard.

What is more, this was not his first incident of drug trafficking. In 2014, the Defendant was convicted of Conspiracy to Possess with Intent to Distribute Heroin in the District of Arizona and sentenced to 35 months in custody. Obviously, his previous conviction and sentence did not serve as adequate deterrence. His decision to transport nearly 1000 kilograms of cocaine represents an elevation in criminality. An appropriate sentence in this case should reflect several key sentencing principles, but certainly should emphasize specific deterrence. Clearly trusted among those in the drug trade, Defendant BARAJAS must be deterred from committing serious drug related offenses again.

After taking into consideration the seriousness of the offense and the remaining 3553(a) factors, including avoiding unwarranted sentencing disparities among similarly situated defendants, the United States recommends a sentence of 100 months custody, followed by 5 years of supervised release, no fine, and a $100 special assessment.

//

//

## II. STATEMENT OF FACTS

### A. The Crime

On December 17, 2021, a Maritime Patrol Aircraft (MPA) detected a go-fast vessel with two outboard engines traveling on a westerly course approximately 220 nautical miles northwest of Manta, Ecuador, in international waters. United States Coast Guard Cutter ("USCGC") STONE, operating nearby, acquired the vessel using a helicopter, and diverted a pursuit small boat with an embarked boarding team to intercept the go-fast vessel.

As the Coast Guard helicopter appeared overhead defendants' vessel, officers observed the defendants jettison bales and fuel barrels overboard. The helicopter ordered the vessel to stop using blue law enforcement lights and audible callouts in English and Spanish. Because the vessel and its occupants remained non-compliant to the order to stop, warning shots ahead of the go-fast vessel's bow and disabling fire were used.



In the meantime, the Coast Guard helicopter vectored the pursuit small boat to the bale field where a single bale was recovered. The Coast Guard pursuit small boat then proceeded to intercept the go-fast vessel and a second small boat was launched from USCGC STONE to recover additional bales from the bale field. In total, the Coast Guard recovered 24 bales.



Upon approach to defendants' go-fast vessel from the small boat, Coast Guard officers observed four individuals, fifteen 55-gallon drums of fuel, and food and drink on deck. The vessel, appearing to be in good condition, was not flying a physical flag, had no

registration number or other markings on the hull, and no registration documents. Defendant CIFUENTES claimed to be the master of the vessel but did not wish to make a claim of nationality for the vessel. When asked to provide their last port of call and next port of call, it was reported as Buenaventura, Colombia, and Mexico. When asked the purpose of their voyage, CIFUENTES claimed, "they were bringing the coke." The Coast Guard treated the vessel as without nationality or stateless and conducted a full law enforcement boarding.

 

USCGC STONE subsequently embarked the four defendants and 24 bales of cocaine, along with one cell phone, multiple SIM cards, and a satellite phone battery. Officers tested a jettisoned bale, which tested positive for cocaine.



5

**B. Defendant's Statements**

On January 20, 2023, in a presentence interview, Defendant BARAJAS adopted the factual basis of the plea agreement and explained that he was financially motivated to commit the offense. PSR ¶15-17. He did not make a statement post-arrest.

## III.   THE GUIDELINES

## A.   Calculation

Under USSG § 2D1.1(c)(1), the base offense level is 38. The United States is not recommending any enhancements or reductions for role. Since this was a team evolution and the nature and extent of Defendant's participation was significant (the voyage was expected to last 10 days and cover over 1,500 nautical miles with defendants exhibiting significant discretion), minor role is not appropriate. There is a two-level downward adjustment for Safety Valve, a three-level downward adjustment for acceptance of responsibility, and a four-level downward departure for combination of circumstances/waiver of appeal. Although a close question, BARAJAS has met the minimal requirements for Safety Valve under USSG § 2D1.1(b)(18) and 5C1.2. He is in Criminal History Category II per the PSR. The resulting guideline range is 97 to 121 months in custody. Pursuant to the plea agreement, the United States recommends a sentence of 100 months in custody. This accounts for Defendant's unique personal characteristics as well as the speed with which Defendant resolved this case, saving the Government significant resources, pleading guilty at first opportunity, and foregoing any substantive pre-trial motions.

## B.   Government Recommendation

Several factors justify the Government's recommendation. First, Defendant pled guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel. The evidence demonstrates the defendants coordinated an at-sea voyage spanning hundreds of nautical miles to transport a vast sum of cocaine valued at tens of millions of dollars. This is a

significant drug offense, involving an extreme quantity of cocaine. The quantity involved is over 190 times the amount of cocaine required for a ten-year mandatory minimum and double the amount of cocaine that establishes the highest possible base offense level in the sentencing guidelines. Had the defendants made it to Mexico and the cocaine forwarded on to the United States as expected, the cocaine would have been valued at well over $24,000,000. This volume of cocaine would have caused immeasurable harm to the public.

The responsibility and trust instilled in BARAJAS and his co-defendants also influences the Government's recommendation. BARAJAS and his co-defendants acted as more than mere drug couriers, as is commonly seen in this District for land-based drug smuggling crimes. In contrast to a land-based courier tasked with making a short drive across the border, maritime smuggling requires specialized skills and considerable trust from cartel leadership. 960 kilograms of cocaine (the at-sea weight) is a significant load, even by cartel standards. As is known from investigating these crimes, stakeholders from the sell side (Colombia) and buy side (Mexico) invest considerable sums of money to make these shipments possible. It would defy logic and common sense to let untrained and untrusted men guard this quantity of valuable cargo for a prolonged period in an environment that already carries significant natural risk. These ventures require unique expertise, and men like the Defendant are selected expressly because they are trusted to carry out the task.

In contrast to his co-defendants, BARAJAS was hired by the "buy side" in Mexico and traveled all the way from Nogales, Sonora, Mexico to Buenaventura, Colombia, for a reason. He was a trusted agent responsible for verifying the cocaine in Colombia and then safely traveling back with it to Mexico. Though Defendant was neither the captain, mechanic, nor a driver of the panga, his position was critical. He maintained a position of trust within the organization and was so important to the overall scheme that despite his

7

lack of seamanship, he was on board. Simply put, there is no need for dead weight at sea. If Defendant were not indispensable to the voyage, he would have stayed at the pier.



Accordingly, minor role is not appropriate. This was expected to be a long voyage—ten days. For that entire time, the defendants would maintain complete custody and control of the drugs. They were required to resolve all difficulties that navigating on the high seas brings, including weather, sea state, mechanical challenges, and inconsistent communications. Out in the middle of the ocean hundreds of miles from shore, the defendants were alone in protecting and safeguarding the precious cargo. No one was there to direct their movements—they were captains of their own ship. They only had each other to rely on and were a team.

As mentioned, the United States does not believe an adjustment for role, either aggravating or mitigating, is appropriate. This was a team evolution and the burden rests with the Defendant to demonstrate that he was substantially less culpable than the average participant. The defendant bears the burden of proving that he is entitled to a downward

8

adjustment based on his role in the offense." *United States v. Dominguez-Caicedo*, 40 F.4th 938, 964-66 (9th Cir. 2022) (noting that the relevant comparators are the *actual* participants in the defendant's crime—not that of every hypothetical member of a typical drug trafficking organization). He has not met his burden. BARAJAS was not less culpable than the average participant—let alone *substantially* less so. The nature and extent of his participation—the trust instilled in him—and the discretion and decision-making authority the defendants had while at sea, greatly weighs against a role reduction.

Finally, the fact that this is BARAJAS' second drug distribution offense influences the Government's recommendation. He is not a first-timer. Having already served a lengthy sentence in the United States, BARAJAS deeply understood the ramifications if caught and yet decided to reoffend. The sentence today must reflect this. Since the threat of additional time in custody was insufficient to keep this defendant from agreeing to transport nearly a ton of cocaine at sea, a graduated sentence is needed to reflect his recidivism, the increase in severity of this crime, and support the rule of law. For BARAJAS and others, the incentive to make large sums of money trafficking drugs must be combated with the deterrence of significant sentences.

**C.     Conclusion**

After considering the 3553(a) factors, the United States believes the recommended sentence of 100 months in custody, followed by 5 years' supervised release, no fine, and a $100 special assessment is sufficient but not greater than necessary.

DATED: May 23, 2023                         Respectfully submitted,

                                            RANDY S. GROSSMAN
                                            United States Attorney

                                            */s/ Allison B. Murray*
                                            Allison B. Murray
                                            Special Assistant U.S. Attorney